Nevin TEW, Appellant/Respondent,

v.

Beverly TEW, Appellee/Petitioner.

No. 02A03–0911–CV–529.

Court of Appeals of Indiana.

April 13, 2010.

Michael T. Yates, More Miller Yates & Ross, Fort Wayne, IN, Attorneys for Appellant.

Stephen P. Rothberg, Fort Wayne, IN, Attorney for Appellees.

## OPINION

BRADFORD, Judge.

Appellant/Respondent Nevin Tew ("Father") appeals the trial court's order denying his petition seeking a declaration of emancipation of his daughter or alternatively, a modification of his child support obligation. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and Beverly Tew ("Mother") were married on August 7, 1982. Mother and Father are the parents of K.T., born July 14, 1986, and M.T., born January 31, 1991.[1] Mother and Father separated on March 28, 2002. The trial court subsequently entered a divorce decree dissolving their marriage on June 17, 2003.

Pursuant to the divorce decree, Mother was awarded custody of M.T., and Father was awarded parenting time and ordered to pay child support. On May 12, 2005, the custody provision of the divorce decree was modified, and Father was awarded custody of M.T. Mother later regained custody of M.T. Father's child support obligation was modified following each change in custody. Over time, following the final change in custody, communication between M.T. and Father decreased.

On April 15, 2009, Father filed a Petition for Declaration of Emancipation of Child and For a Modification of Child Support ("Emancipation Petition"). Father alleged that he should no longer be obligated to pay child support for M.T. because M.T. should be deemed emancipated or alternatively, because M.T. had repudiated her relationship with Father. Following a hearing, the trial court denied Father's petition. Father now appeals.

## DISCUSSION AND DECISION

On appeal, Father contends that the trial court erred by determining that M.T. should not be deemed emancipated pursuant to Indiana Code section 31–16–6–6 (2008). Alternatively, Father contends that the trial court erred by not modifying his child support obligation. Father also contends that the trial court erred in finding that M.T. had not repudiated her relationship with Father.

In the instant case, neither party filed a written request for special findings. Rather, the trial court entered its special findings and conclusions *sua sponte. See Pham v. Pham,* 650 N.E.2d 1212, 1214 (Ind.Ct.App.1995) (providing that when a trial court makes special findings on its own motion rather than a motion by one of the parties, such findings are issued *sua sponte* ). When a trial court enters special findings and conclusions *sua sponte,* the specific findings and conclusions control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Nelson v. Marchand,* 691 N.E.2d 1264, 1267 (Ind.Ct.App.1998). On appeal, we review the trial court's specific findings and conclusions under a two-tiered standard of review. *Staresnick v. Staresnick,* 830

---

1. K.T. has previously been deemed emancipated and is not at issue in the instant appeal.

N.E.2d 127, 131 (Ind.Ct.App.2005). We first consider whether the evidence supports the findings, and next whether the findings support the judgment. *Id.* The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.* However, we may affirm a general judgment on any theory supported by the evidence adduced at trial. *Nelson,* 691 N.E.2d at 1267.

## I. Emancipation

 The Indiana Supreme Court has stated that it believes that "the legislature's intent in enacting the emancipation statute [was] to require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support." *Dunson v. Dunson,* 769 N.E.2d 1120, 1124 (Ind.2002). "What constitutes emancipation is a question of law, while whether emancipation has occurred is a question of fact." *Id.* at 1123 (quotation omitted). "Emancipation cannot be presumed, but must be established by competent evidence by the party seeking emancipation." *Id.* With respect to emancipation, Indiana Code section 31–16–6–6 provides as follows:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

"[E]mancipation requires that (1) the child initiate the action putting itself outside of the parents' control and (2) the child in fact be self-supporting." *Dunson,* 769 N.E.2d at 1123–24.

On appeal, Father contends that the trial court erred in determining that M.T. was not emancipated pursuant to Indiana Code section 31–16–6–6. Specifically, Father claims that the trial court erred in determining that M.T. was not emancipated under either Indiana Code subsection 31–16–6–6(a)(3) or (b)(3).

### A. Subsection (a)(3)

■ Father claims that M.T. should be deemed emancipated pursuant to subsection (a)(3) because M.T. was not enrolled in either a secondary or post-secondary educational institution for a period of approximately eight months. With respect to subsection (a)(3), the trial court found that M.T. graduated from high school on June 4, 2009, and enrolled in classes in community college as a full-time student in August of 2009. The record reveals that M.T. completed all requirements for graduation from high school in December of 2008, and was not required to attend high school classes during the 2009 spring semester. However, M.T. did not graduate from high school until the completion of the 2009 spring semester on June 4, 2009. M.T. subsequently enrolled in classes in community college in August of 2009 as a full-time student. The record further reveals that M.T. could not enroll in classes in community college prior to graduating from high school, and that M.T. enrolled in community college at the earliest possible date following her high school graduation. Moreover, nothing in the record suggests that M.T. was not actually enrolled in high school during the 2009 spring semester. We conclude that these facts are sufficient to support the trial court's finding regarding M.T.'s educational status. We also conclude that the finding supports the trial court's determination that M.T. is not emancipated pursuant to subsection (a)(3).

### B. Subsection (b)(3)

■ Father also claims that M.T. should be emancipated pursuant to subsection (b)(3) because M.T. was not under the care and control of either parent. With respect to subsection (b)(3), the trial court found as follows:

11. The parties' child, [M.T.], was born on January 31, 1991, and is eighteen years old. She currently resides in an apartment with her boyfriend.

12. [M.T.] graduated from [high school] on June 4, 2009. She is currently enrolled in and attending [community college] and is taking 12 credit hours this semester.

13. [M.T.] is employed at Sam's Club and earns approximately Two Hundred Twenty Five Dollars ($225.00) per week in gross weekly income. [M.T.] uses the money earned from her employment for her "maintenance and upkeep" which includes the payment of one-half of the utilities at her apartment as well as her clothing and other needs.

14. [Mother] pays [M.T.'s] share of the rent as well as insurance for her car, school supplies and medications.

15. [M.T.] is not capable of supporting herself without the assistance of [Mother] and [Father].

Appellant's App. p. 39. These findings are sufficiently supported by the record, which reveals that although M.T. is currently living in an apartment with her boyfriend, she is not outside the reach of Mother's control and is not capable of supporting herself without aid from Mother and Father. M.T. relies on Mother for assistance

and financial support in nearly every aspect of her daily life, and her part-time employment does not negate her need for such assistance. Because emancipation requires both that (1) the child initiate the action putting itself outside of the parents' control and (2) the child in fact be self-supporting, we conclude that the trial court's finding that M.T. is not self-supporting is sufficient to support the trial court's determination that M.T. is not emancipated pursuant to subsection (b)(3). See Dunson, 769 N.E.2d at 1123–24.

Father additionally claims that the expenses incurred as a result of M.T.'s choice to reside outside of Mother's home should not be considered a reasonable cost of M.T.'s maintenance and care. In support of this argument, Father relies on Carpenter v. Carpenter, 891 N.E.2d 587 (Ind.Ct. App.2008), Borders v. Noel, 800 N.E.2d 586 (Ind.Ct.App.2003), and Robles v. Robles, 855 N.E.2d 1049 (Ind.Ct.App.2006), in which the parties' children were found to be emancipated. Each of these cases, however, can be distinguished from the instant matter. In Carpenter, the father petitioned the trial court for a modification of his child support obligation for and emancipation of the parties' son. 891 N.E.2d at 591. The record established that the parties' son earned a salary sufficient to support himself, but the son chose to live with his mother so that he could purchase certain luxury items, including a $1500 flat-screen television, a motorcycle, and a car. Id. at 594. The son's reliance on his mother for financial assistance was not a necessity, but rather a conscious decision by the son concerning his financial affairs. Id. Here, however, M.T.'s reliance on her parents for financial assistance was

a necessity, not a choice. Despite her part-time employment, M.T. relied on her parents to assist in paying for her basic needs. In Borders, the parties' son did not attend a post-secondary educational institution, but rather worked full-time and was self-sufficient, negating the need for support. 800 N.E.2d at 591. Here, M.T. worked only part-time while attending community college as a full-time student and was not self-sufficient. In Robles, the parties' daughter removed herself from her parents' control after becoming pregnant and establishing means to support herself and her child, again negating the need for support. 855 N.E.2d at 1055. Here, M.T. relied on her parents' assistance for her basic necessities while attending community college.

Further, to the extent that Father claims that M.T. should be ordered to live with Mother while attending community college in order to take advantage of Mother's available support, we disagree. At the time M.T. enrolled in community college, Mother had custody and was responsible for M.T.'s care. M.T. and Mother decided it was appropriate for M.T. to live in an apartment while attending community college, and the trial court was satisfied that this decision did not reduce the amount of support necessary from Father. Additionally, Father has presented no argument suggesting that M.T.'s need for support would be substantially reduced if she were to reside with Mother or establishing that M.T.'s current living arrangement is unreasonable.[2] Thus, we conclude that the trial court did not err in this regard.

---

2. We note that were we to accept Father's claim in this regard, we would set the precedent that any child who attended a post-secondary education institution, whether said institution be near the custodial parent's home or hours away, could be deemed emancipated if the child did not reside in the custodial parent's home. Clearly this was not the legislature's intent.

## II. Modification of Father's Child Support Obligation

Alternatively, Father contends that the trial court erred in not modifying his child support obligation. Specifically, Father claims that the trial court's failure to use a post-secondary education worksheet to calculate his child support obligation constituted error. Father also claims that the trial court's failure to condition his child support obligation on M.T.'s return to Mother's home constituted error.

### A. Post–Secondary Education Worksheet

■ Father claims that the trial court's failure to use a post-secondary education worksheet in computing his child support obligation constitutes error. Father, however, made no argument before the trial court relating to the use of a post-secondary education worksheet. Likewise, Father neither submitted a post-secondary education worksheet for the trial court's consideration nor objected to the trial court's failure to consider a post-secondary education worksheet below. Father, therefore, has waived this claim on appeal. *See Butterfield v. Constantine*, 864 N.E.2d 414, 417 (Ind.Ct.App.2007) (providing that Appellant's failure to produce a post-secondary education worksheet or any evidence relating to post-secondary expenses, Appellant's failure to object to Appellee's lack of a worksheet, and Appellant's tacit agreement to proceed without a verified worksheet constituted a waiver of his right to appeal the trial court's order).

### B. Return to Mother's Home

■ Father also claims that the trial court's failure to condition the child support order on M.T.'s return to Mother's home constitutes error. In support, Father relies on a portion of the Indiana Supreme Court's opinion in *Dunson* which provides as follows:

Although this case does not present the issues, we add that we do not mean to suggest that the child may create an obligation of the parents to provide financial support outside the home by refusing support available within the structure of the residence of the family or a single parent. Put another way, we are not suggesting that a child who leaves the familial residence to escape customary parental supervision is entitled to enlist the aid of a court in obtaining an order for support. If anything, the parents in such a case could insist that the child be ordered home to take advantage of the available support, subject to ordinary supervision.

*Dunson*, 769 N.E.2d at 1125.

Father argues that *Dunson* requires that his obligation to pay child support for M.T. should be conditioned upon M.T. returning to Mother's home. Father, however, presents no argument suggesting why the Indiana Supreme Court's cautionary language employed in *Dunson* should relate to the instant matter. *Dunson* merely cautions that a support order *may* be conditioned upon a return to the parental home when the child refuses available support within the parental home or chooses to live outside the parental home as a way to escape customary parental supervision. *Id.* (emphasis added). Here, Father presents no evidence and nothing in the record suggests that M.T. refused support available within the structure of her Mother's home. Put another way, nothing in the record indicates that M.T. chose to live in an apartment as a way to escape customary parental supervision. Rather, it appears that M.T. and Mother decided it was appropriate for M.T. to live in an apartment while attending Community college. The trial court concluded that their decision on this point did not warrant a reduc-

tion in support. Father has failed to show error in this regard.

### III. Repudiation

Father additionally contends that the trial court erred by finding that M.T. had not repudiated her relationship with Father. Repudiation of a parent is a complete refusal to participate in a relationship with his or her parent. *Redd v. Redd,* 901 N.E.2d 545, 550 (Ind.Ct.App. 2009) (quotations omitted). Under certain circumstances, repudiation will obviate a parent's obligation to pay certain expenses for a child, including college expenses. *Id.* at 550–51. " '[W]here a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child.' " *Id.* at 551(quoting *McKay v. McKay,* 644 N.E.2d 164, 166 (Ind.Ct.App. 1994)). Moreover,

> Adult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits. Such children, when faced with the answer 'no' to their requests, may decide to seek the funds elsewhere; some may decide that the time is ripe for reconciliation. They will not, in any event, be allowed to enlist the aid of the court in compelling the parent to support their educational efforts unless they demonstrate a minimum amount of respect and consideration for that parent.

*Id.* (quoting *McKay,* 644 N.E.2d at 167).

With respect to repudiation, the trial court made the following findings:

> 20. At trial, [Father] alleged that the parties' child had repudiated her relationship with him and that as a result, he should not be required to pay child support.
>
> . . . .

> 24. Further, the Court finds that although there have been no overnight parenting time periods between [Father] and [M.T.] since the entry of the order modifying custody, there has been no express and/or complete repudiation by [M.T.]. At trial, [M.T.], testified that she and [Father] had dinner at [a restaurant] in September of 2009.

Appellant's App. p. 40. Upon review, we conclude that the trial court's findings are sufficiently supported by the record. The record reveals that although M.T. has not engaged in overnight visits with her father, she has engaged in group visits with her Father, her grandmother, and her brother. In addition, the record reveals that M.T. and Father went to dinner together at a restaurant in September of 2009, to celebrate Father's birthday. Despite Father's claim to the contrary, the record does not support a showing that M.T. has exhibited a complete refusal to engage in a relationship with Father. Therefore, in light of the trial court's factual findings regarding repudiation which were sufficiently supported by the record, we conclude that the trial court did not err in determining that M.T. has not repudiated her relationship with Father.

In sum, the trial court did not err in determining that M.T. is not emancipated under Indiana Code section 31–16–6–6(a)(3) or (b)(3), in denying Father's request to modify his child support obligation, and in further determining that M.T. has not repudiated her relationship with Father.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.