**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 25 2012, 8:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DEBORAH M. AGARD**
Law Office of Deborah M. Agard
Indianapolis, Indiana

**J. KATHRYN JENKINS**
Law office of J. Kathryn Jenkins
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARSHA SPURR, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )   No. 29A04-1108-DR-416 |
| | ) |
| ROBERT SPURR, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
The Honorable David K. Najjar, Magistrate
Cause No. 29D01-0206-DR-453

**April 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Marsha Spurr ("Mother") appeals from denial of her motion to correct error, which challenged the dissolution court's order determining that her daughter, S.S., was emancipated for purposes of determining child support owed by Robert Spurr ("Father").

We reverse and remand.

**Issue**

Mother raises one issue for our review, whether the dissolution court's decision that S.S. was emancipated as of the date of Father's petition was clearly erroneous.

**Facts and Procedural History**

Mother and Father were married. The marriage produced two children, S.S. and R.S. On May 3, 2003, the dissolution court entered its Decree of Dissolution, which established Father's child support obligation for the two children in the amount of $288.00 per week. The Decree also established Father's obligation to provide health insurance for S.S. and R.S.

In May 2008, S.S. graduated from high school. Shortly after graduating from high school, S.S. learned she was pregnant. S.S.'s child was born on February 13, 2009. S.S. married on August 7, 2009. S.S. maintained some form of employment for much of this time, and applied for and obtained government assistance sometime during July 2008 for prenatal care, medical care for her child, nutritional assistance, and, eventually, public housing.

On December 19, 2008, Father filed a Verified Petition to Terminate Child Support Due to Emancipation of Minor Child. After several continuances and ongoing disputes

regarding discovery and past-due payments of child support and claims for payment of medical expenses, on October 5, 2010, the dissolution court conducted a hearing on Father's petition. At the conclusion of that hearing, the dissolution court ruled from the bench, and subsequently in a written order, that S.S. was emancipated as of the date of Father's petition.

On November 4, 2010, Mother filed a Motion to Reconsider and/or to Correct Error challenging the dissolution court's decision. The court denied the motion on December 1, 2010.

A hearing was conducted on February 22, 2011, concerning the amount of Father's child support arrearage. On May 12, 2011, the court entered an order setting forth Father's child support obligations after S.S.'s emancipation, and specifying the extent of Father's obligation to reimburse Mother medical expenses paid for S.S. and R.S. After Mother submitted calculation of the arrearages, on July 13, 2011, the dissolution court determined Father's arrearage to be $11,083.70, and stated that the October 5, 2010, order finding S.S. to have been emancipated, as well as the orders of May 12 and July 13, 2011, were final orders "pursuant to Trial Rule 58."[1] (App. 55.)

This appeal followed.

**Discussion and Decision**

Standard of Review

Mother appeals the dissolution court's determination that S.S. was emancipated as of

---

[1] Trial Rule 58 sets forth the requirements for entry of judgment, the required contents of a judgment, and certain confidentiality requirements. Given the language of the order, we construe the July 13, 2011, order as one designating the three orders as final under Trial Rule 54(B), which provides, "judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment."

the December 19, 2008, filing date of Father's petition for modification of his support obligations. Father has not submitted an appellee's brief. In such cases, we need not undertake the burden of developing arguments for the appellee. Our standard of review is therefore less stringent, and we review for prima facie error, or error "at first sight," "on first appearance," or "on the face of it." Butrum v. Roman, 803 N.E.2d 1139, 1142 (Ind. Ct. App. 2004), trans. denied.

Mother appeals from a motion to correct error. On review of a motion to correct error, we reverse only where the trial court has abused its discretion. Bales v. Bales, 801 N.E.2d 196, 198 (Ind. Ct. App. 2004), trans. denied. An abuse of discretion has occurred where the court's decision is against the logic and effects of the facts and circumstances before it or if the court has misinterpreted the law. Id.

Here, the dissolution court's decision on emancipation came as written findings and conclusions, which were entered sua sponte. In such cases, the specific findings and conclusions control only on the issues they cover, while a general judgment standard applies to any other issues concerning which no findings and conclusions were entered. Tew v. Tew, 924 N.E.2d 1262, 1264 (Ind. Ct. App. 2010), trans. denied.

On appeal, we apply a two-tiered standard of review to the specific findings and conclusions. Id. We first consider whether the evidence supports the findings, and then whether the findings support the judgment. Id. at 1265. We set aside the findings and conclusions only if they are clearly erroneous, that is, where the record contains no supporting facts or inferences and our review of the record "leaves us with a firm conviction

4

that a mistake has been made." Id. We neither reweigh evidence nor assess witness credibility, and we consider only the evidence that favors the judgment. Id. We review conclusions of law de novo. Id. Where a general judgment standard applies, however, we may affirm on any theory supported by the evidence. Id.

Analysis

Father's petition alleged that S.S. was emancipated under Indiana Code section 31-16-6-6, and specifically sought a finding of emancipation under either subsection (a)(1) of the statute or termination of his child support obligations as to S.S. under subsection (a)(3).[2] On appeal, Mother concedes that S.S. was emancipated by operation of law on August 7, 2009, the date of her marriage. See I.C. § 31-16-6-6(a)(1) & (b)(2). Mother contends, however, that the dissolution court erred when it concluded that S.S. was emancipated before her marriage under subsection (a)(1), and that the court erred in its determination that Father's child support obligations ceased as to S.S. under subsection (a)(3).

What constitutes emancipation is a question of law; whether a child is emancipated is a question of fact. Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009) (quoting Dunson v. Dunson, 769 N.E.2d 1120, 1123 (Ind. 2002)). Courts may not presume emancipation. Id. Rather, the party seeking a finding that a child is emancipated must bear the burden of establishing emancipation by competent evidence. Id.

---

[2] We note that Father's petition alleged that S.S. was emancipated under subsection (a)(3). That provision does not provide for emancipation, but rather indicates the legislature's determination of conditions under which a parent's support obligations terminate. See Sexton v. Sedlak, 946 N.E.2d 1177, 1187 (Ind. Ct. App. 2011) (noting that "[t]he real question addressed by the trial court … is not whether T.S. is emancipated, but rather whether the requirements of Section 31-16-6-6(a)(3) for termination of child support are satisfied"), trans. denied.

5

Subsection (a)(1) provides that:

The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

I.C. § 31-16-6-6(a)(1).

Subsection (b) elaborates upon the required showing for a finding of emancipation under (a)(1), and provides:

For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) is on active duty in the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

I.C. § 31-16-6-6(b).

The Indiana Supreme Court has interpreted Section 31-16-6-6(b)(3) to mean that "emancipation requires that (1) the child initiate the action putting itself outside the parents' control and (2) the child in fact be self-supporting." Dunson, 769 N.E.2d at 1123-24. This serves to advance the legislature's intent "that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such

6

care and support." Id. at 1124. The court rejected a reading of subsection (b)(3) that would "permit emancipation of children who are no longer under parents' care," because such "'automatic emancipation'" would allow parents "to 'divorce their children' and avoid paying child support simply by sending their children to live with a third party or, worse yet, just throwing the child out of the house." Id.

Here, the dissolution court found:

3.      [S.S.] graduated from high school in the spring of 2008 and discovered that she was pregnant close in time to her graduation.  [S.S.] did not attend post-secondary education.

4.      [S.S.] applied for and received governmental assistance during and after her pregnancy, and for at least one year after the birth of her child.  [S.S.] is currently living in an apartment for which she receives rent assistance, and is not residing with either parent.

5.      [S.S.]'s child was born [in] 2009 and she was married on August 7, 2009.

6.      Emancipation of [S.S.] was effected at least with her marriage on August 7, 2009.  The court finds that [S.S.]'s decisions of getting pregnant, having a child, and applying for and accepting assistance from the State of Indiana are the decisions of an adult not under the care and control of either parent, despite evidence that both parents were engaging in some financial support of the child.

7.      The Court finds that [S.S.] shall be considered to be emancipated as of the date of the filing of the Motion for Modification on or about December 19, 2008.

(App. 14-15.)  Thus, the court concluded that S.S. had been emancipated under Subsections 31-16-6-6(a)(1) & (b).

While the court's findings are not entirely erroneous, its ultimate conclusion—that S.S. was emancipated on or about December 19, 2008—is prima facie erroneous.  The

7

evidence most favorable to the court's finding shows that S.S. applied for benefits from the State of Indiana after becoming pregnant; this included medical care and, at some point, food assistance. Father testified that, during the period of March through May, 2008, he thought S.S. had spent significant amounts of time out of Mother's home, and based this upon unspecified statements of R.S.

While all of this may be evidence of S.S. having by her own actions placed herself outside of either of her parents' care and control, it does not satisfy the requirement that S.S. must have "in fact be[en] self supporting" upon the date of her emancipation. Dunson, 769 N.E.2d at 1124. On the date set by the dissolution court's order as the effective date of S.S.'s emancipation, the evidence in the record indicates that S.S. was living with Mother and had begun to receive some benefits from the State of Indiana. The record is silent, however, as to what those benefits were or the amounts of the benefits obtained, except that they included prenatal care and some form of nutritional assistance.

The record also reveals that S.S. had worked during and after her graduation from high school, but there is no competent evidence as to how much she earned on or around December 18, 2008. Father insisted that S.S. worked thirty-five hours each week based upon a text message he said he received from S.S. a day prior to the October 5, 2010 hearing, while Mother testified that S.S. earned around $75 per week. S.S. did not testify, and no documents were introduced that might have provided evidence of S.S.'s income on December 18, 2008.

Taken together, the evidence does not support a conclusion that S.S. was emancipated

8

as of December 18, 2008. Because the dissolution court advanced no other basis for its decision to terminate Father's child support obligations as to S.S. on December 18, 2008, and Mother has established prima facie error in the absence of an appellee's brief, this error is dispositive.[3] We therefore reverse the court's determination that S.S. was emancipated on December 18, 2008, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

MATHIAS, J., concurs.

ROBB, C.J., dissents with opinion.

---

[3] Much of the evidence Mother and Father presented to the dissolution court—all of which came as testimony from the parties—dealt with S.S.'s circumstances after the emancipation date designated in the court's emancipation finding, or was presented without any connection to time periods before or after December 2008. Among these are Father's testimony that he purchased groceries and a car for S.S. and paid for her cell phone, and mother's testimony that S.S. earned only $75 per week from employment until close to the time of the October 5, 2010 hearing.

# IN THE
# COURT OF APPEALS OF INDIANA

MARSHA SPURR, )
)
    Appellant-Petitioner, )
)
      vs. )    No. 29A04-1108-DR-416
)
ROBERT SPURR, )
)
    Appellee-Respondent. )

**ROBB, Chief Judge, dissenting**

I respectfully dissent from the majority's conclusion that the trial court erred in finding S.S. emancipated. Viewing the evidence favorably to the trial court's judgment, the evidence suggests S.S. stopped living with Mother in the fall of 2008, S.S. was working, and she received government assistance in meeting her needs. The majority concludes living outside of Mother's home is not enough to find that S.S. was "not under the care or control of" either parent for the purposes of Indiana Code section 31-16-6-6(b)(3), reasoning that such "automatic emancipation would allow parents to divorce their children and avoid paying child support simply by sending their children to live with a third party or, worse yet, just

10

throwing the child out of the house." Slip op. at 7 (quoting <u>Dunson v. Dunson</u>, 769 N.E.2d 1120 (Ind. 2002)).

However, the evidence suggests S.S. was not thrown out of her Mother's home or sent to live with someone else. The evidence suggests S.S. had the opportunity to live with her Mother and chose not to. She had a support option available, even if it was not the most comfortable arrangement, and she elected to leave the care of her Mother. Further, in regard to the majority's statement that S.S. must have been in fact supporting herself, I would disagree based upon Indiana Code section 31-16-6-6(a)(3), which provides the elements required for termination of child support, including that the child "is <u>or is capable</u> of supporting himself of herself through employment." (emphasis added). In determining whether a child can provide for herself, the legislature has provided both an objective, in fact standard and a subjective, "what is the child capable of" standard. I find the legislature's language instructive in analyzing whether a child is under the "care or control of" a parent for the purposes of part (b)(3) of the statute, as well. For these reasons, I would hold that the trial court did not err in finding S.S. emancipated.

Alternatively, if I were to reverse and remand as the majority now orders, I would direct the trial court to determine what Mother's child support obligation should be since S.S. does not live in Mother's home. Child support in Indiana is based upon a shared model. Our child support obligation worksheet determines how much each parent owes based on a variety of factors. Generally, the custodial parent does not actually pay their obligation because the custodial parent provides food, clothing, and shelter for a child residing in his or

11

her home. However, where, as here, the child lives on her own, both parents should be required to contribute to the child's support. Seeing no worksheet or evidence that Mother is paying support in the record, I would direct the trial court to determine Mother's child support obligation.